UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| CLARENCE MCNAIR,<br><br>　　　　　　　　　　Plaintiff,<br><br>v.<br><br>L. BERG,<br><br>　　　　　　　　　　Defendant. | Case No. 3:16-cv-00487-MMD-WGC<br><br>**REPORT & RECOMMENDATION OF U.S. MAGISTRATE JUDGE**<br><br>Re: ECF No. 19 |

　　　　This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

　　　　Before the court is defendant Berg's Motion for Summary Judgment. (ECF Nos. 19, 19-1 to 19-4.) Plaintiff filed a response (ECF No. 23), and Berg filed a reply (ECF No. 24).

　　　　After a thorough review, it is recommended that Berg's motion be denied.

### I. BACKGROUND

　　　　Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 6.) The events giving rise to this action took place while Plaintiff was housed at Northern Nevada Correctional Center (NNCC). (*Id.*)

　　　　On screening, Plaintiff was allowed to proceed with a claim for retaliation under the First Amendment, as well as excessive force and failure to protect claims under the Eighth Amendment. (Screening Order, ECF No. 5.) The retaliation claim is based on the allegations that Plaintiff had filed a complaint pursuant to the Prison Rape Elimination Act (PREA) against Berg's co-workers, then Berg refused to permit Plaintiff to take the short route to chow hall, yelled obscenities at Plaintiff and rammed him into the wall, referencing his PREA complaint. The excessive force

1  claim is based on allegations that Berg maliciously and sadistically rammed Plaintiff into a
2  concrete wall. Finally, the failure to protect claim is based on allegations that Berg called Plaintiff
3  a snitch and other derogatory names based on his sexuality in front of other inmates, and Plaintiff
4  has been physically and verbally harassed by other inmates. (*Id.*)

5  Berg now moves for summary judgment, arguing that Plaintiff failed to exhaust his
6  administrative remedies before filing suit.

## II. LEGAL STANDARD

The Prison Litigation Reform Act (PLRA) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). An inmate must exhaust his administrative remedies irrespective of the forms of relief sought and offered through administrative avenues. *Booth v. Churner*, 532 U.S. 731, 741 (2001).

The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). Unless the failure to exhaust is clear from the face of the complaint, the defense must be raised in a motion for summary judgment. *See id.*, overruling in part *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003) (stating that the failure to exhaust should be raised in an "unenumerated Rule 12(b) motion").

"If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56. If material facts are disputed, summary judgment should be denied, and the district judge rather than a jury should determine the facts [in a preliminary proceeding]." *Id.*, 1168, 1170-71 (citations omitted). "Exhaustion should be decided, if feasible, before reaching the merits of a prisoner's claim. If discovery is appropriate, the district court may in its discretion limit discovery to evidence concerning exhaustion, leaving until later—if it becomes necessary—discovery related to the merits of the suit." *Id.* at 1170 (citing *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008)).

Once a defendant shows that the plaintiff did not exhaust available administrative

remedies, the burden shifts to the plaintiff "to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Id.* at 1172 (citations omitted). The ultimate burden of proof, however, remains with the defendant. *Id.*

The Supreme Court has clarified that exhaustion cannot be satisfied by filing an untimely or otherwise procedurally infirm grievance, but rather, the PLRA requires "proper exhaustion." *Woodford v. Ngo,* 548 U.S. 81, 89 (2006). "Proper exhaustion" refers to "using all steps the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id.* (citation omitted). Thus, "[s]ection 1997e(a) requires an inmate not only to pursue every available step of the prison grievance process but also to adhere to the 'critical procedural rules' of that process." *Reyes v. Smith,* 810 F.3d 654, 657 (9th Cir. 2016) (quoting *Woodford,* 548 U.S. at 90). "[I]t is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones v. Bock,* 549 U.S. 199, 218 (2007). That being said, an inmate exhausts available administrative remedies "under the PLRA despite failing to comply with a procedural rule if prison officials ignore the procedural problem and render a decision on the merits of the grievance at each available step of the administrative process." *Reyes,* 810 F.3d at 658.

To reiterate, an inmate need only exhaust "available" administrative remedies. *See Ross v. Blake,* 136 S.Ct. 1850, 1858 (2016). That is, "those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth,* 532 U.S. at 738).

### III. DISCUSSION

NDOC's grievance process is set forth in Administrative Regulation (AR) 740. (ECF No. 19-1.) An inmate is required to attempt informal resolution, and if unsuccessful, timely proceed through the informal, first and second levels in order to properly exhaust administrative remedies. (*Id.*) After submitting an informal level grievance, an inmate normally has five days from receipt of the response to appeal to the next level. (ECF No. 19-1 at 8, AR 740.05.12.A.) An inmate similarly has five days from receipt of the response to a first level grievance to proceed to the second level. (ECF No. 19-1 at 9, AR 740.06.4.A.)

On January 20, 2016, Plaintiff filed an informal level grievance, Grievance Number 2006-30-16049, discussing the issues alleged in the complaint. (ECF No. 19-2, ECF No. 19-3 at 3; ECF No. 23 at 7-15.) The grievance coordinator signed the informal level grievance on January 27, 2016. (ECF No. 19-3 at 3; ECF No. 23 at 7.) The response to the informal level grievance advised Plaintiff that the matter was being forwarded to the Inspector General's Office for further review. (ECF No. 19-3 at 2; ECF No. 23 at 6.) Plaintiff signed the informal level grievance, indicating his disagreement on February 17, 2016. (ECF No. 19-3 at 3; ECF No. 23 at 7.)

Plaintiff filed a first level grievance until June 1, 2016, stating that he had filed his informal level grievance on January 20, 2016, and as of June 1, 2016, the prison had not responded. (ECF No. 19-3 at 5; ECF No. 23 at 17-19.) In response, Plaintiff received an improper grievance memorandum, stating that he was required to attach all necessary documents when submitting a grievance, "i.e. all past submissions and responses." (ECF No. 19-3 at 4; ECF No. 23 at 16.)

Plaintiff filed his second level grievance on July 1, 2016. (ECF No. 19-3 at 6; ECF No. 23 at 21.) He stated that when he filed the informal grievance, he kept the pink copy. When he filed the first level grievance, he kept the pink copy and the gold copy from the informal grievance, and attached the full informal grievance to the first level grievance, stapling them all together and deposited them in the grievance box.

Berg does not include any response to the second level grievance with his submission, but Plaintiff includes an improper grievance memorandum. (ECF No. 23 at 20.) The memorandum states: "Mr. McNair, you must complete the First Level portion of this grievance before you may proceed to the Second level. In addition you have not submitted any documentation from your Informal level." (Id.)

Berg argues that Plaintiff did not timely file his first level grievance. In other words, Berg contends that Plaintiff signed the informal level grievance as received on February 17, 2016, and was required to file his first level grievance within five days. Plaintiff did not file his first level grievance until June 1, 2016.

Plaintiff's signature on the informal level grievance, dated February 17, 2016, indicating his disagreement with the informal level response, would ordinarily lead the court to conclude that Plaintiff's June 1, 2016 first level grievance was untimely. In this case, however, Plaintiff was advised in response to his informal level grievance that the matter was being referred to the Inspector General's Office for further review. AR 740.05, which comes under the heading of "Informal Grievance," provides:

> 11. Grievances alleging staff misconduct will be reviewed by the Warden and if deemed appropriate will be forwarded to the Office of the Inspector General through the OITS/NOTIS.
> A. The Informal Response will reflect this action being initiated.
> B. Timeframes are suspended until a disposition is received from the Inspector General's Office.

(ECF No. 19-1 at 7-8.) According to AR 740.05.11.B, the timeframe for Plaintiff to submit his first level grievance, which ordinarily would have been due within five days of receiving the response to the informal level grievance, was suspended until he received a disposition from the Inspector General's Office. While Plaintiff elected to proceed with a first level grievance when he had not heard anything from the Inspector General's Office as of June 1, 2016, the timeframe for him to do so was still suspended. Berg's argument that Plaintiff did not timely file his first level grievance is contradicted by AR 740.

Insofar as Berg argues that Plaintiff did not properly complete the grievance process because he did not attach the appropriate documentation as advised in response to the grievances, the court finds that the timeframes were still suspended; therefore, Plaintiff was under no obligation to file those grievances. Moreover, the first level grievance (and subsequently the second level) was rejected because Plaintiff did not attach the prior grievance documentation, i.e., the informal level grievance and the response advising him the matter had been referred to the Inspector General. AR 740.06.2 states that at the first level, an inmate should attach "[a]ny additional relevant documentation[.]" (ECF No. 19-1 at 8.) The regulation does not specifically advise the inmate to include the prior grievance documentation and any response. Nor does it seem reasonable to infer that this is what AR 740.06.2 requires since the inmate had already submitted the grievance to the prison, and the response was issued by the prison and is maintained in its system. Therefore, in addition to the fact that Plaintiff was under no obligation to submit the

1  subsequent grievances, the court finds the prison did not assert a valid reason for rejecting them.

2  The court anticipates an argument that Plaintiff was premature in filing his action if he had not received a disposition from the Inspector General's Office and completed the three levels of the grievance process. The court cannot discern on the record before it whether or when Plaintiff received a disposition from the Inspector General's Office so as to determine if administrative remedies were available or unavailable to him at the time he filed the action. In the event Berg decides to file a renewed motion to argue that Plaintiff did not complete the three levels of the grievance process before filing this action, the motion should take into account that the court would likely find administrative remedies were effectively unavailable to Plaintiff if he never received a disposition from the Inspector General's Office, or there was an unreasonable delay in his receipt of this disposition.[1]

In sum, Berg's motion for summary judgment should be denied.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Berg's Motion for Summary Judgment (ECF No. 19).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

DATED: February 22, 2018.

_William G. Cobb_
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

---

[1] The court confronted a similar issue in *Lafferty v. Williams*, 3:16-cv-00279-RCJ-WGC. There, the undersigned issued a report and recommendation (ECF No. 24) finding the inmate's administrative remedies were effectively unavailable when, even at the time the motion was briefed, the Inspector General had not even decided whether to initiate an investigation. AR 740 provided no guidance to the inmate on how to proceed with exhausting administrative remedies under those circumstances.